## Corbet *v.* Oil City Fuel Supply Company, Appellant.

*Contract—Printed form — Insertion of written words — Principal and agent—Estoppel—Gas companies—Consideration—Mutuality—Equity.*

Where the duly authorized agent of a natural gas company acting as the company's representative in making contracts with consumers presents to a consumer a printed form of contract under seal, and the latter absolutely refuses to sign or accept it unless the words " so long as he may desire the use thereof " are inserted, and these words are inserted, and the consumer relying on the contract equips his house for the use of natural gas, and the company furnishes him gas for five years without

any objection to the former contract, the company cannot deny the contract as executed, nor can it be heard to aver that the written words were without consideration, or that the contract was void for want of mutuality. Such a contract may be specifically enforced in equity in favor of the consumer.

*Contracts—Mutuality—Remedies.*

The principle that contracts must be mutual, must bind both parties or neither, does not mean that in every case each party must have the same remedy for a breach by the other. Covenants may lie against one where only assumpsit can be maintained against the other. The mutuality required is that which is necessary for creating a contract in some manner enforceable on both sides, but not necessarily enforceable on both sides by specific performance.

Where there are mutual covenants stipulating reciprocal advantages in an executory contract, and even if not mutual in the sense of equality of benefit, that is, not the mutuality which stands in the way of an enforcement, yet, if the contract be accepted and performed by one, equity will compel performance on the part of the other.

*Natural gas companies—Acts of May 29, 1885, P. L. 29, and May 11, 1897, P. L. 50.*

Natural gas companies incorporated under the Acts of May 29, 1885, P. L. 29, and May 11, 1897, P. L. 50, who do not comply with their duty " to furnish gas to persons, corporations and associations within convenient connecting distance " of their lines may be compelled to do so by a court of equity.

Argued May 5, 1902. Appeal, No. 132, Oct. T., 1901, by defendant, from decree of C. P. Jefferson Co., Sept. T., 1896, No. 2, on bill in equity, in case of Charles Corbet v. Oil City Fuel Supply Company. Before Rice, P. J., Beaver, Orlady, W. W. Porter and W. D. Porter, JJ. Affirmed.

Bill in equity to restrain a natural gas company from depriving the plaintiff of gas. Before Greer, P. J., specially presiding.

The facts appear by the opinion of the Superior Court.

*Errors assigned* was decree against the defendant company.

*George W. Means*, with him *Benjamin M. Clark*, for appellant.—If the words " so long as he (the plaintiff) may desire to continue the use thereof " were intended to create a contract which might bind the defendant perpetually, but which might be terminated by the plaintiff at pleasure, such contract being

without consideration, was void for want of mutuality, and could not be enforced in equity : Beck v. Walkers, 24 Pa. C. C. Rep. 403 ; Philadelphia Ball Club v. Hallman, 8 Pa. C. C. Rep. 57 ; Vogel v. Pekoc, 157 Ill. 339 (42 N. E. Repr. 386) ; Rafolovitz v. Am. Tobacco Co., 25 N. Y. Supp. 1036 ; Bailey v. Austrian, 19 Minn. 535 ; Brown v. Munger, 42 Minn. 482.

Even if the contracts upon which the plaintiff's bill is founded were valid at law, yet being revocable at the pleasure of the plaintiff, a court of equity has no jurisdiction to decree specific performance, but must leave the plaintiff to his remedy at law : Express Co. v. Western, etc., R. R. Co., 99 U. S. 191 ; Rutland Marble Co. v. Ripley, 10 Wallace, 339 ; Philips v. Mining Co., 7 Phila. 619 ; Ballou v. March, 133 Pa. 64 ; Meason v. Kaine, 63 Pa. 335 ; Bodine v. Glading, 21 Pa. 50 ; Nelson v. Kelly, 91 Ala. 569 (8 So. Repr. 690).

A party in attempting to make a contract with a local agent which shall be perpetually binding upon the principal is bound to know that such exercise of authority and power on the part of the agent is extraordinary and peculiar, and is put on his inquiry as to whether the agent has such authority from his principal : Duncan v. Hartman, 143 Pa. 595.

*George A. Jenks,* with him *C. Z. Gordon,* for appellee.—A consideration may be either something done, or something to be done, or a promise itself. When it is something already done, it is idle to talk of want of mutuality. That is to be considered only when the obligations of both parties are future : Grove v. Hodge, 55 Pa. 516 ; Bellas v. Hays, 5 S. & R. 427.

The law pays no regard to the adequacy of consideration ; if it is of some legal benefit to one party or injury to the other, though of the slightest kind, it is sufficient : Hartman v. Danner, 74 Pa. 36 ; Hendrick v. Thomas, 106 Pa. 327 ; Steigerwalt v. Smeych, 9 Pa. Superior Ct. 363 ; Kirkpatrick v. Muirhead, 16 Pa. 117 ; Dutton's Estate, 181 Pa. 426.

Want of mutuality is no defense to either party, except in cases of executory contracts. It has no applicability to an executed bargain : Grove v. Hodges, 55 Pa. 516 ; Rogers v. Saunders, 16 Maine, 92 ; Northern Cent. Ry. Co. v. Walworth, 193 Pa. 207.

Where special circumstances require it, specific performance

will be decreed: Adams v. Messinger, 147 Mass. 185 (17 N.
E. Repr. 491); Willard v. Tayloe, 8 Wall. 567; Johnston v.
Price, 172 Pa. 427; Penna. Co. v. Franklin Fire Ins. Co., 181
Pa. 40; Bald Eagle Valley R. R. Co. v. Nittany Valley R. R.
Co., 171 Pa. 284.

Whether appellant's agent had authority or not, he was their
agent, and they having had the fruits of his act are subject to
the conditions: Penna. Nat. Gas Co. v. Cook, 123 Pa. 170;
Wheeler & Wilson Mfg. Co. v. Aughey, 144 Pa. 398; McNeile
v. Cridland, 168 Pa. 16.

Where there exists an entire uncertainty in any calculation
of the damage for the breach of a personal contract or the meas-
ure of damages is purely conjectual, equity will entertain the
case. In such case, the remedy at law is inadequate and inef-
ficient: Palmer v. Graham, 1 Parsons, 476; Goodwin Gas Stove
& Meter Co.'s Appeal, 117 Pa. 514; McGowin v. Remington,
12 Pa. 56; Cornwall, etc., R. R. Co.'s Appeal, 125 Pa. 232.

OPINION BY ORLADY, J., July 10, 1902:

The plaintiff filed a bill in equity to restrain the defendant
" from shutting off and depriving him of gas for a cook stove
and laundry in his dwelling and to restore and return connec-
tions and mixers heretofore severed and removed to a furnace
and grate in his dwelling and to a furnace in his office, and to
supply him with gas therefor," etc. A demurrer was filed,
which was overruled and a preliminary injunction awarded,
directing the defendant company to reconnect its service with
plaintiff's establishments and refrain from cutting off his supply.
The record was removed to this court (5 Pa. Superior Ct. 19)
and the decree was reversed, and it was ordered that the de-
fendant answer the bill within such reasonable time after the
return of the record as should be fixed by the court below.
Pursuant to this decree, an answer was filed and considerable
testimony taken.

On August 1, 1891, the defendant company and Charles Cor-
bet entered into two written contracts, wherein the defendant
company agreed to furnish natural gas to the plaintiff to be
used in his house and law office in Brookville, Pennsylvania.
The agreements were on a printed form prepared by the de-
fendant and submitted to the plaintiff for his signature by Mr.

Fleming, who was the active representative of the defendant at Brookville in making contracts with customers and who had general charge of its affairs necessary to the carrying on of its business at that place. Mr. Corbet expressed himself as dissatisfied with the printed form, and insisted on a provision in the contract, which materially changed the printed form in providing that the gas to be used in his dwelling and office should be for "so long as he may desire to continue the use thereof" for the purposes mentioned and at designated rates. The printed form was not changed in other respects. This agreement, as amended, was executed by Mr. Corbet and delivered to Mr. Fleming who in turn delivered it to the defendant and the plaintiff at once became a consumer of gas under these contracts. He paid for gas for five years in accordance with these stipulations, when the defendant gave him notice that the term of his contract had expired and that thereafter he would be required to pay in advance the monthly rates of the company, which were higher in amount than had been mentioned in the contracts. It is idle to say that the words "so long as he may desire to continue the use thereof" were inserted without the knowledge of the defendant, who alleged that they were first discovered five years afterwards. The testimony abundantly shows that when the application was submitted to Mr. Corbet, it was examined and criticised, an initial letter of his name was changed and the words quoted were inserted in the presence of Mr. Fleming by Mr. Corbet, who declared that he would not make the contract without them. The sending of the contracts to the main office of the company at Oil city may or may not have been known to Mr. Corbet; the contract does not suggest anything in regard to it. The defendant is designated as the Oil City Supply Company of Brookville, Pennsylvania, where the contract was signed and where the plaintiff resided. It is presuming a great deal to suppose that the principal would not examine the contract delivered to it by its agent until after five years of performance of its conditions. The plaintiff's house and office were specially fitted up and piped for gas and connected with the pipe line furnishing it when the contracts were executed and the mains of the defendant were then and are yet the only source of supply. It is contended by the appellant that the insertion of the

words "so long as he may desire to continue the use thereof" were without consideration and render the contract void for want of mutuality. The contract was not without consideration in view of the special preparation and expenditure of money in providing for and constructing the means to use the gas under the contract, and after stipulating for payment of gas at fixed rates for the future; neither can it be contended that the defendant did not have legal power to make such a contract, if it so desired. The several covenants regulating the use of the gas and payment for it had regard to future consumption at the rate designated as well as for the quarterly payments as they became due. It is not a question of adequacy of consideration. If it is of some legal benefit to one party or injury to another, though of the slightest kind, it is a sufficient consideration: Hendrick v. Thomas, 106 Pa. 327; Steigerwalt v. Smeych, 9 Pa. Superior Ct. 363.

Consideration, like every other part of a contract, must be the result of agreement. The parties must understand and be influenced to the particular action by something of value, of convenience or inconvenience, recognized by all of them as the moving cause (Kirkpatrick v. Muirhead, 16 Pa. 117); and the testimony in this case is overwhelming as found to be a fact by the court below, that Mr. Corbet emphatically refused to sign the contract without a provision such as was then inserted by him. This was clearly and legibly done, and the contract was accepted and acted upon for five years without objection. In defendant's answer it is admitted that it entered into two contracts with the plaintiff on or about August 1, 1891, but denied that the contracts exhibited were true copies of the contracts signed, sealed and entered into with the plaintiff. No other contracts than these were offered in evidence, and the defendant's notice of July 31, 1896, that it had concluded to terminate the contracts and put Mr. Corbet's property on meters thereafter, fully identifies these in evidence as the only ones in existence. The undertaking of the defendant under an agreement under seal was a sufficient consideration to support the undertaking of the plaintiff and it does not lack mutuality for the reason that Mr. Corbet cannot be compelled to use gas. He applied for its use so long as he may desire to continue the use thereof, but must pay in advance before any is used. The prin-

ciple that contracts must be mutual, must bind both parties or neither, does not mean that in every case each party must have the same remedy for a breach by the other. Covenant may lie against one, where only assumpsit can be maintained against the other. The mutuality required is that which is necessary for creating a contract in some manner enforceable on both sides, but not necessarily enforceable on both sides by specific performance: Grove v. Hodges, 55 Pa. 516; Northern Central Railway Co. v. Walworth, 193 Pa. 207; Phila. Ball Club, Ltd., v. Lajoie, 202 Pa. 210. Even if the defendant had waived the provision for payment in advance and had allowed the gas to flow without payment, it had an ample legal remedy to enforce appellee's covenant to pay for it.

Where a large part of the consideration for entering into a contract has been received and the contract is not in violation of law, it ought to be enforced specifically, if it be of such terms as that it is capable of enforcement in equity, and if the parties, as they now stand in relation to each other, can be brought within the jurisdiction of equity so that the hand of a chancellor will reach them: Cumberland Valley Railroad Co. v. Gettysburg, etc., Ry. Co., 177 Pa. 519.

Where there are mutual covenants stipulating reciprocal advantages in an executory contract, and even if not mutual in the sense of equality of benefit, that is, not the mutuality which stands in the way of an enforcement, yet, if the contract be accepted and performed by one, equity will compel performance on the part of the other: Yerkes v. Richards, 153 Pa. 646; Borie v. Satterthwaite, 180 Pa. 542. If the agreement, as signed by Mr. Corbet, be treated only as an application, nevertheless it was accepted and approved in all of its terms, and, after five years of ratification, and acceptance of payments by the defendant as therein stipulated, it is now too late to deny that there was a contract between the parties or that it was at all different from that contained in this writing. The defendant company was incorporated under the Act of May 29, 1885, P. L. 29, and its supplement of May 11, 1897, P. L. 50, and under its charter it became its duty " to furnish gas to persons, corporations and associations within convenient connecting distance of its line of pipe, as may desire to use the same, upon such terms, and under such reasonable regulations, as the gas

company shall establish." A refusal to discharge this duty brings it within equitable jurisdiction. A substituted remedy at law could not under the facts be fully adequate, complete or reasonably convenient: Johnston v. Price, 172 Pa. 427. Or as stated in Pennsylvania Co., etc., v. Franklin Fire Insurance Co., 181 Pa. 40, " to oust jurisdiction in equity, it (the remedy) must be complete ; that is, it must attain the full end and justice of the case ; it must reach the whole mischief and secure the whole right of the party, in a perfect manner, at the present time, and in the future : " Steinmeyer v. Siebert, 190 Pa. 471. A bill in equity may be sustained solely on the ground that it is the most convenient remedy (Brush Electric Co's. Appeal, 114 Pa. 574) ; and this especially so where the remedy afforded by a court of law is obviously inconvenient and of doubtful adequacy: Conemaugh Gas Co. v. Jackson Farm Gas Co., 186 Pa. 443.

The plaintiff's house is equipped for the use of gas after the outlay of considerable money, and the defendant has a monopoly of the business of furnishing gas. Under such circumstances the measure of damages would be purely conjectural and an action at law is not adequate.

The argument that there is no irreparable damage would not be so often used by wrongdoers, if they would take the trouble to observe that the word " irreparable " is a very unhappily chosen one, used in expressing the rule that an injunction may issue to prevent wrongs of a repeated and continuing character, or which occasion damages that are estimable only by conjecture and not by any accurate standard. As this argument is generally presented, it seems to be supposed that injunctions can apply only to very great injuries; and it would follow that he who has not much property to be injured, cannot have this protection for the little he has. Besides this, where the right invaded is secured by statute or by contract, there is generally no question of the amount of damage, but simply of the right. He who grants a right cannot take it away, even on giving a better, without a new agreement for the purpose : Commonwealth v. Pittsburg & Connellsville Railroad Co., 24 Pa. 159.

The assignments of error are overruled and the judgment is affirmed.